STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 CA 0242

ANNETTE BILELLO HAGEN

VERSUS

DAVID HAGEN

JUDGMENT RENDERED: **SEP 1 5 2023**

* * * * * * *

Appealed from The Thirty-Second Judicial District Court
Parish of Terrebonne • State of Louisiana
Docket Number 146,637 • Division C

The Honorable Juan W. Pickett, Presiding Judge

* * * * * * *

Alexandria E. Faia                    COUNSEL FOR APPELLANT
Steven J. Lane                        DEFENDANT—David Hagen
New Orleans, Louisiana


Annette Billelo Hagen                 APPELLEE
Houma, Louisiana                      PLAINTIFF—*Pro Se*

* * * * * * *

**BEFORE: WELCH, HOLDRIDGE, AND WOLFE, JJ.**

Holdridge J. concurs

**WELCH, J.**

In this longstanding, contentious proceeding for divorce, child custody, child support and other ancillary matters, David Hagen ("Dr. Hagen") appeals a judgment that, among other things, found his ex-wife, Annette Bilello Hagen ("Ms. Bilello") in contempt of court for her failure to allow Dr. Hagen all of the physical custodial time that he was entitled to, reduced Dr. Hagen's child support obligation, and found Dr. Hagen in contempt of court for harassing or unduly burdening Ms. Bilello and for failing to reimburse Ms. Bilello for his percentage share of certain expenses of the children that he was required to pay. Finding no manifest error or abuse of the trial court's vast discretion with regard to such matters, we affirm.

## BACKGROUND

Dr. Hagen and Ms. Bilello were married on June 27, 1986, and during their marriage, they had five children, all of whom are now majors. Ms. Bilello filed a petition seeking a divorce and other ancillary relief on October 24, 2005. Since that time, the parties have engaged in extensive litigation over numerous issues, including legal and physical custody, child support and other expenses for the children, choice of school for the children, contempt of court, and the partition of the community.

The latest litigation, which forms the basis of the instant appeal, concerns a rule for contempt of court filed by Dr. Hagen on May 19, 2020; a rule to reduce child support filed by Dr. Hagen on May 19, 2020; and a rule for contempt of court filed by Ms. Bilello on June 1, 2020. These pleadings concern the parties' two youngest children, fraternal twins E.H. and B.H., who were born on September 19, 2003 and are now majors.[1]

---

[1] E.H. and B.H. were sixteen years of age when the latest litigation commenced, they were seventeen years of age when that litigation ended in the trial court, and they are now twenty years old.

2

At the time Dr. Hagen and Ms. Bilello filed their respective pleadings, the physical custody and the support of E.H. and B.H. were controlled by a July 10, 2018 judgment and a joint custody implementation plan attached thereto. The July 10, 2018 judgment and joint custody implementation plan awarded the parties joint and shared custody of the minor children on a "rotating seven (7) and seven (7) basis," maintained Ms. Bilello as the children's domiciliary parent, set a specific holiday custodial schedule, and set forth detailed guidelines for the parties for co-parenting and for communicating with each other and the children. It also set Dr. Hagen's monthly child support obligation at $1,973.07 per month, which was based on Dr. Hagen's monthly gross income of $27,066.83 and Ms. Bilello's monthly gross income of $5,366.59; provided that Dr. Hagen would pay 83% and Ms. Bilello would pay 17% of all school tuition, mandatory school books, mandatory school fees, medical insurance, and uncovered necessary medical and dental expenses; and provided the procedure by which the parties could request reimbursement for those expenses, or make an objection thereto, and the time limit within which the reimbursement must be made. It also provided that "[e]ach party shall be responsible for 50% of the expenses associated with mutually agreed upon extracurricular activities," with "[t]rack and field," "[l]ong distance running," and "4-H Club" specifically listed as mutually agreed upon activities. The July 10, 2018 judgment further provided that the judgment and the attached joint custody implementation plan "shall supersede any and all prior judgments pertaining to the custody, support, [and] welfare of the minor children." Prior to the July 10, 2018 judgment and pertinent to this appeal, a June 20, 2007 consent judgment provided that Dr. Hagen had the right to claim the children as dependents on federal and state tax returns filed by him.

In Dr. Hagen's rule for contempt of court, he alleged several violations of the July 10, 2018 judgment and joint custody implementation plan by Ms. Bilello,

3

including, but not limited to Ms. Bilello's failure to allow Dr. Hagen to exercise the periods of physical custody to which he was entitled on numerous occasions; her alienation of and indoctrination of the children against Dr. Hagen; her violation of the rules for communicating with the children; and her failure to reimburse or timely reimburse Dr. Hagen for her percentage share of expenses of the children. Dr. Hagen also asserted that Ms. Bilello claimed the dependency exemption for the two children on her 2019 income tax returns, which was a violation of the parties' June 20, 2007 consent judgment granting Dr. Hagen the right to claim the children as dependents on federal and state income tax returns.

In Dr. Hagen's rule to reduce child support, he alleged that since the rendition of the July 10, 2018 judgment, there had been a material change of circumstances warranting a reduction in his child support obligation. More particularly, he claimed that his gross income had decreased and that Ms. Billello's gross income had increased.

In Ms. Billello's rule for contempt, she alleged that Dr. Hagen had violated several provisions of the July 10, 2018 judgment, including, but not limited to, refusing to allow the children to communicate with her during his custodial time; failing to reimburse Ms. Bilello for his percentage share of the children's expenses; and harassing Ms. Bilello by sending her an overabundance of unnecessary emails that contained fabricated allegations, criticized her parenting skills, and were otherwise "threatening, demeaning, and condescending."

A lengthy trial of the matters raised in these pleadings was held on August 10, 2020, August 12, 2020, October 20-23, 2020, October 26, 2020, and December 8, 2020. On December 11, 2020, the trial court signed a judgment granting in part and denying in part Dr. Hagen's rule for contempt; granting in part and denying in part Ms. Bilello's rule for contempt; and granting Dr. Hagen's rule to reduce child support.

With regard to Dr. Hagen's rule for contempt, and pertinent to the issues raised by Dr. Hagen in this appeal, the trial court found Ms. Billello in contempt of court for denying Dr. Hagen physical custody of the children during his custodial periods and for failing to make timely reimbursement payments and being in arrears on those reimbursements. The trial court denied Dr. Hagen's rule for contempt for Ms. Bilello claiming the minor children on her 2019 income tax return, and the trial court's judgment was silent with respect to Dr. Hagen's rule for contempt for Ms. Bilello's purported alienation of and indoctrination of the children against Dr. Hagen.[2] As punishment for Ms. Bilello's contempt of court, including, but not limited to the above findings, the trial court imposed on Ms. Bilello: a sentence of thirty days in jail; a modification of legal custody and award of child support in favor of Dr. Hagen; a fine of $500.00; and ordered her to pay the courts costs associated with Dr. Hagen's rule for contempt, the reimbursement arrearages on or before January 31, 2021, and the attorney fees of Dr. Hagen in the amount of $1,500.00. However, the jail sentence, fine, and modification of legal custody and award of child support in favor of Dr. Hagen were suspended upon Ms. Bilello complying with the rotating seven day and holiday physical custodial schedule, and paying, before January 31, 2021, all court costs associated with Dr. Hagen's rule for contempt, all reimbursements due in the amount of $870.69, and attorney fees in the amount of $1,500.00 on or before January 31, 2021.

With regard to Ms. Bilello's rule for contempt, and pertinent to the issues the issues raised by Dr. Hagen in this appeal, the trial court found Dr. Hagen in contempt for failing to reimburse Ms. Bilello for his percentage share of particular expenses for the children, including drivers' education expenses in the amount total amount

---

[2] The trial court's judgment denied Dr. Hagen's rule for contempt on three other issues (denying Dr. Hagen telephone access to the children, contacting the children outside of designated times, and sending someone else to pick up the minor children at the end of Dr. Hagen's custodial time) and it granted his rule for contempt on one other issue (taking the minor child to a doctor for treatment of a non-emergency or non-life-threatening injury).

of $672.30 ($415.00, $207.50 and $49.80) , a required reading expense for an iPad in the amount of $256.42, a parking permit fee in the amount of $49.80, 4-H club fees in the amount of $5.00, and cross country running expenses incurred by one of the children in the total amount of $75.32 (shoes in the amount of $57.45 and spikes in the amount of $17.87). The trial court also found Dr. Hagen in contempt of court for harassing or unduly burdening Ms. Bilello with non-productive means of communication.[3] As punishment for Dr. Hagen's contempt, the trial court imposed a $250.00 fine, which would be suspended if Dr. Hagen paid, by January 31, 2021, all of the court costs associated with Ms. Bilello's rule for contempt and all reimbursements owed to her in the amount of $1,058.84.

With regard to Dr. Hagen's rule to reduce child support, the trial court found that a material change in financial circumstances existed such that a reduction in Dr. Hagen's child support was warranted. The trial court determined that child support would be calculated pursuant to La. R.S. 9:315.20(B) Worksheet B, and that it would be based on its finding that Dr. Hagen had a monthly gross income of $23,401.33, which was 75% of the parties' combined monthly gross income, and that Ms. Bilello had a monthly gross income of $7,785.08, which was 25% of the parties' combined monthly gross income. The trial court specifically found that both parties' expense reimbursement or in-kind payments received in the course of employment, self-employment, or operation of a business were not to be considered in the calculation of child support, as both parties failed to establish that the reimbursements or in-kind payments were both significant and reduced the other parent's personal living expenses. The trial court ordered Dr. Hagen to pay child support to Ms. Bilello in the amount of $1,847.08 per month, retroactive to the date of the demand (for the

---

[3] The trial court also denied Ms. Bilello's rule for contempt on five other issues (refusing to allow the minor children access to the cellular telephones while at the home of Dr. Hagen, monitoring the children's communications with Ms. Bilello, altering custodial periods based upon the "stated wishes" of a child, allowing the children to dictate when they go to Dr. Hagen's home, and refusing to pay certain expenses of the children).

reduction), and that Dr. Hagen would pay 75% of and Ms. Bilello would pay 25% of all high school tuition, mandatory high school books, mandatory high school fees, and uncovered necessary medical and dental expenses, as outlined in the joint custody implementation plan.

Dr. Hagen has appealed the December 11, 2020 judgment.[4] On appeal, he argues that the trial court erred in: (1) awarding him only $1,500.00 in attorney fees, and that, pursuant to La. R.S. 9:346, he should have been awarded all of the attorney fees that he incurred; (2) failing to find Ms. Bilello in contempt of court for alienating the children from Dr. Hagen; (3) denying his rule for contempt as to Ms. Bilello claiming the minor children on her 2019 taxes; (4) finding him in contempt for harassing Ms. Bilello and for failing to reimburse Ms. Bilello for his percentage share of expenses, therefore, he should not have been ordered to pay Ms. Bilello's court costs or the reimbursement arrearages; and (5) in calculating Ms. Bilello's income for purposes of calculating child support.

**CONTEMPT**

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court constitutes a constructive contempt of court. La. C.C.P. art. 224(2).

To find a person guilty of constructive contempt, the court must find that he or she violated the order of the court intentionally, knowingly, and purposely, without justifiable excuse. **Rogers v. Pastureau**, 2012-2008 (La. App. 1st Cir. 4/26/13), 117 So.3d 517, 532, writ denied, 2013-1833 (La. 8/8/13), 120 So.3d 247.

---

[4] The record reveals that Dr. Hagen filed a motion for and was granted an appeal of the December 11, 2020 judgment in February, 2021. However, the record before us does not reveal the reason for the delay between the granting of Dr. Hagen's motion for appeal and its lodging with this Court in March, 2023.

If the person charged with contempt is found guilty, the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed. La. C.C.P. art. 225(B). The punishment which a court may impose upon a person adjudged guilty of contempt of court is provided in La. R.S. 13:4611. La. C.C.P. art. 227.

Louisiana Revised Statutes 13:4611 provides, in pertinent part, as follows:

(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:

* * *

(d)(i) For any other contempt of court, including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.

* * *

(e) In addition to or in lieu of the above penalties, when a parent has violated a visitation order, the court *may* order any or all of the following:

* * *

(iv) Require the parent violating the order to pay all court costs and reasonable attorney fees of the other party.

* * *

(g) The court *may* award attorney fees to the prevailing party in a contempt of court proceeding provided for in this Section.

(Emphasis added).

In addition to these provisions, La. R.S. 9:346 provides, in pertinent part:

A. An action for the failure to exercise or to allow child visitation, custody or time rights pursuant to the terms of a court-ordered schedule may be instituted against a parent. The action shall be in the form of a rule to show cause why such parent should not be held in contempt for the failure and why the court should not further render judgment as provided in this Section.

* * *

8

C. If the action is for the failure to allow child custody, visitation, or time rights pursuant to a court-ordered schedule, and the petitioner is the prevailing party, the defendant shall be held in contempt of court and the court *shall* award to the petitioner:

(1) A reasonable sum for any actual expenses incurred by the petitioner by the loss of his visitation, custody or time rights.

(2) Additional visitation, custody or time rights with the child equal to the time lost.

(3) *All attorney fees* and costs of the proceeding.

(4) All costs for counseling for the child which may be necessitated by the defendant's failure to allow visitation, custody, or time rights with the child.

(Emphasis added).

### *Dr. Hagen's Rule for Contempt*

Dr. Hagen first contends that the trial court erred in failing to award him all of the relief that he was entitled to under La. R.S. 9:346(C) for Ms. Bilello's contempt. More specifically, he points out that La. R.S. 9:346(C) mandates that he be awarded *all* attorney fees and costs he incurred in his rule for contempt and that he incurred and submitted proof of "thousands of dollars" in attorney fees; however, the trial court only awarded him $1,500.00 in attorney fees.

At trial, Dr. Hagen, in support of his request for an award of attorney fees, submitted the affidavit of his attorney, along with itemized statements of account attached thereto. These statements of account reflect that he incurred attorney fees well in excess of $30,000 "relative to pursuing a Rule for Contempt" against Ms. Bilello.

We recognize that La. R.S. 9:346(C) provides that the trial court shall award all attorney fees and costs of the proceeding when a parent is found in contempt for failure to allow child custody, visitation, and time rights, and further, that La. R.S. 13:4611(1)(e)(iv) provides for an award of reasonable attorney fees when a parent has violated a visitation order. However, Dr. Hagen's rule for contempt against Ms.

9

Bilello was not based *solely* on her failure to allow child custody, visitation, or time rights. Rather, Dr. Hagen made numerous other allegations of contempt against Ms. Bilello in his rule, the punishment for which an award of attorney fees is not mandated. See La. R.S. 13:4611(1)(d)(i) and (g). Additionally, we note that Dr. Hagen was not granted all of the relief that he requested in his rule for contempt, as the trial court granted certain parts of that rule for contempt and it denied certain parts of that rule for contempt. Thus, while Dr. Hagen was clearly entitled to be awarded the attorney fees he incurred in pursuing the rule for contempt insofar as Ms. Bilello denied Dr. Hagen his custodial or time rights, he was not entitled to all of the attorney fees he incurred in pursuing his entire rule for contempt.

The trial court in this case was well-aware of the parties, the issues involved in the litigation, and the time spent by Dr. Hagen's counsel of record on the litigation, in preparation of trial, and at trial, and it determined that an award of $1,500.00 was warranted. The trial court has much discretion in fixing an award of attorney's fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. **Anglin v. Anglin**, 2009-0844 (La. App. 1st Cir. 12/16/09), 30 So.3d 746, 752. Based on our review of the record and the trial of this matter, we cannot say that the trial court abused its vast discretion in awarding $1,500.00 in attorney fees to Dr. Hagen for pursuing his rule for contempt insofar as Ms. Bilello denied him his custodial rights or time. Although the trial of this matter was lengthy and the issue of Ms. Bilello's failure to allow Dr. Hagen his custodial rights or time was an issue at that trial, from our review of the record, we note that a significant portion of the testimony at that trial concerned the numerous other issues relating to Dr. Hagen's rule for contempt, *i.e.*, his request for reimbursements, telephone access to and rules for communicating with the children, medical care for the children, and the income tax dependency exemptions, as well as the issues raised in Ms. Bilello's rule for contempt, and Dr. Hagen's rule to reduce child support. Therefore, we find

10

no merit to Dr. Hagen's arguments and affirm the trial court's award of attorney fees to Dr. Hagen in the amount $1,500, which he incurred in pursuing his rule for contempt for Ms. Bilello's failure to allow him custodial rights or time.

Next, Dr. Hagen contends that the trial court erred in failing to find Ms. Bilello in contempt of court for alienating the children from Dr. Hagen. As previously noted, the trial court's judgment with regard to this issue was silent; therefore, the trial court is deemed to have denied that part of the rule for contempt.[5] Dr. Hagen maintains that there was an overwhelming amount of evidence at trial establishing that Ms. Bilello was "guilty of alienating the love and affection between Dr. Hagen and his children and indoctrinating the children against him" in violation of the terms of July 10, 2018 judgment and joint custody implementation order. Before we address this issue, however, we must determine whether it presents a justiciable controversy or whether it has been rendered moot.

It is well-settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to such controversies. **Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance,** 98-0601 (La. 10/20/98), 720 So.2d 1186, 1193. A justiciable controversy connotes an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute that involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. *Id.* An issue is moot when a judgment or decree on that issue has been deprived of practical significance or made abstract or purely academic. *Id.* Stated differently, an issue is moot when a rendered

---

[5] In general, silence in a judgment as to any issue, claim, or demand placed before the trial court is deemed a rejection of the claim and the relief sought is presumed to be denied. **Alost v. Lawler,** 2018-1271 (La. App. 1st Cir. 5/8/19), 277 So.3d 329, 333 n.3.

11

judgment or decree can serve no useful purpose and give no practical relief or effect. See **In re E.W.**, 2009-1589 (La. App. 1st Cir. 5/7/10), 38 So.3d 1033, 1037.)

As previously noted the trial court granted Dr. Hagen's rule for contempt in part and denied it in part. Also, as previously noted, as punishment for *all* of the contempts for which the trial court found Ms. Bilello guilty, it imposed the punishment of: a sentence of thirty days in jail; a modification of custody and an award of child support in favor of Dr. Hagen; a fine of $500.00, the courts costs associated with the filing of Dr. Hagen's rule for contempt; an order to pay the reimbursement arrearages on or before January 31, 2021; and an order to pay Dr. Hagen's attorney fees in the amount of $1,500.00. However, the jail term, fine, and modification of custody and award of child support in favor of Dr. Hagen were suspended upon the following: Ms. Bilello complying with the rotating seven day and holiday physical custodial schedule, Ms. Bilello paying all court costs associated with Dr. Hagen's rule for contempt, her payment of all reimbursements due in the amount of $870.69 to Dr. Hagen before January 31, 2021, and her payment of attorney fees in the amount of $1,500.00 on or before January 31, 2021.

Although Dr. Hagen seeks a ruling from this Court regarding Ms. Bilello's purported contempt for alienating the children from him in violation of the July 10, 2018 judgment and joint custody implementation plan, the trial court already imposed the punishment and suspended part of that punishment. See La. R.S. 13:4611(1)(d)(i). Thus, any additional finding of contempt by this Court would warrant no additional punishment, and further, any ruling by this Court on that issue would have no practical effect and would not provide any relief. As such, we must conclude that this issue is moot and we decline to address the merits of Dr. Hagen's arguments in this regard.

Lastly, with regard to Dr. Hagen's rule for contempt, Dr. Hagen complains that the trial court erred in not finding Ms. Bilello in contempt of court for claiming

12

the minor children as dependents on her 2019 tax returns. He points out that the parties' June 21, 2007 consent judgment gave him the right to claim the children as dependents on federal and state tax income tax returns; however, Ms. Bilello tried to claim the children on her 2019 income tax return. As a result of Ms. Bilello's attempt to claim the children, Dr. Hagen's income tax return was rejected and he was unable to process his tax return for several months. Thus, he claims that Ms. Bilello violated the June 21, 2007 judgment and that the trial court should have held her in contempt and assessed her with the fees that he incurred in having to re-submit his taxes.

We recognize that the June 21, 2007 judgment did indeed give Dr. Hagen the right to claim the children as dependents on federal and state income tax returns. We also recognize that in child custody and support proceedings, a parents' right to claim a child or children as dependents on federal and state income tax returns is governed by the child support guidelines; thus, the right to claim a child or children as a dependent on federal and state tax returns is a child support matter. See La. R.S. 9:315.18. Notably, however, the parties' July 10, 2018 judgment was silent with respect to either party's right to claim the children as dependents on federal and state income tax returns, and further, the July 10, 2018 judgment specifically provided that it and the attached joint custody implementation plan "shall supersede any and all prior judgments pertaining to the custody, support, [and] welfare of the minor children."

According to Ms. Bilello's testimony, based on the superseding provision of the July 10, 2018 judgment, the terms of La. R.S. 9:315.18, and the regulations of the Internal Revenue Service, and because she had the children more time that Dr. Hagen in 2019, she believed that for 2019, she was entitled to claim the children as dependents. The trial court, in its oral reasons for judgment, noting that the July 10, 2018 judgment superseded the prior judgment (the June 21, 2007 judgment) and that

13

it did not address the issue of the dependency exemption, declined to hold Ms. Billello in contempt of court on this basis. Based on our review of the record and the applicable judgments, we find no error in the trial court's ruling, as there is no evidence that Ms. Bilello violated an order of the court intentionally, knowingly, and purposely, without justifiable excuse. Therefore, we affirm the trial court's ruling denying Dr. Hagen's rule for contempt with regard to Ms. Bilello claiming the minor children on her 2019 income tax return.

### Ms. Bilello's Rule for Contempt

Next, Dr. Hagen challenges two rulings of the trial court with regard to Ms. Bilello's rule for contempt. First, he contends that the trial court erred in finding him in contempt for failing to reimburse Ms. Bilello for his percentage share of particular expenses for the children, including drivers' education expenses in the total amount of $672.30 ($415.00, $207.50, and $49.80), a required reading expense for an iPad in the amount of $256.42, school parking permit fees in the amount of $49.80, 4-H club fees in the amount of $5.00, and expenses incurred by one of the children for cross-country running expenses in the total amount of $75.32 (shoes in the amount of $57.45 and spikes in the amount of $17.87). Dr. Hagen points out that the July 10, 2018 judgment only required him to pay 83% of "all school tuition, mandatory school books, mandatory school fees, medical insurance, and uncovered necessary medical and dental expenses" and that these items for which Ms. Bilello sought reimbursement and the trial court awarded were not in any of these categories. Therefore, he argues that Ms. Bilello was not owed reimbursement for those expenses and that he did not violate the terms of the July 10, 2018 judgment by declining to reimburse her for those expenses.

At the outset, we note that in addition to the provision in the July 10, 2018 judgment requiring Dr. Hagen to pay 83% of "all school tuition, mandatory school books, mandatory school fees, medical insurance, and uncovered necessary medical

14

and dental expenses," the joint custody implementation plan attached to and made a part of that judgment also provided that "[e]ach party shall be responsible for 50% of the expenses associated with mutually agreed upon extracurricular activities" and further that "[t]rack and field," "[l]ong distance running," and "4-H Club" were specifically listed as mutually agreed upon activities. Since, the expenses for 4-H Club and for cross country running shoes and spikes were expenses for mutually agreed upon extracurricular activities for which Dr. Hagen specifically agreed to be liable for his percentage share, we find no abuse of the trial court's discretion in finding that Dr. Hagen was responsible for his percentage share of those expenses.

With regard to the other expenses, the trial court found that the school parking permit fee was a "mandatory fee" for those students who drive a vehicle to school. Notably, the testimony in the record establishes that the children drove a vehicle to school. Based on our review of the record, we cannot say that the trial court's determination that the school parking fee was a "mandatory fee" was manifestly erroneous. We likewise find no error in the trial court's determination that required reading expense for an iPad was a "required reading expense." As such, we cannot say that the trial court abused its vast discretion in determining that Dr. Hagen was responsible for, but failed to pay, his percentage share of those expenses.

The trial court also determined that Dr. Hagen was liable for his percentage share of the drivers' education expenses because the driving academy was a "school" and the July 10, 2018 judgment did not specify that Dr. Hagen was responsible only for "high" school tuition. Thus, the trial court concluded that the language of the judgment requiring Dr. Hagen to pay his percentage share of "school tuition" included tuition for drivers' education. Based on our review of the judgment and the record, we cannot say that the trial court abused its discretion in determining that Dr. Hagen was responsible for, but failed to pay, his percentage share of this expense.

15

Next, Dr. Hagen contends that the trial court erred in finding him in contempt for harassing or unduly burdening Ms. Bilello with non-productive means of communication. Dr. Hagen maintains that his communications with Ms. Bilello were done through Our Family Wizard, were intended to document Ms. Bilello's denial of his custodial time, and were not harassing. At trial and in Ms. Bilello's rule for contempt, she claimed that she had received an overabundance of unnecessary emails to the point of harassment and that the emails she received contained fabricated allegations, were threatening, demeaning, and condescending, and often constituted demands or instructions on what she should do and how to be a "mother."

The trial court's July 10, 2018 judgment and joint custody implementation plan attached thereto specifically required the parties to communicate with each other in writing through Our Family Wizard. It further provided that "[n]either parent [would] harass or unduly burden the other with excessive or abusive telephone calls, text messages, emails[,] or any other such nonproductive means of communication." At trial, an extensive number of communications between the parties' from Our Family Wizard was offered into evidence. After thoroughly reviewing all of those emails, we must agree with the trial court's apparent determination that many of those emails were not necessary, that the substance of some of those emails were threatening, condescending, and demeaning, and that Dr. Hagen frequently instructed Ms. Bilello on how to parent or be a parent. Therefore, based on our review of the record, we cannot say that the trial court's factual finding that these emails were harassing or unduly burdensome was manifestly erroneous or in its determination that Dr. Hagen's emails in this regard were a violation of the July 10, 2018 judgment and joint custody implementation plan.

For these reasons, we find no error or abuse of the trial court's vast discretion in granting Ms. Bilello's rule for contempt in part, finding Dr. Hagen in contempt of

16

court, or in the punishment that it imposed on Dr. Hagen for his contempt. Therefore, we affirm that portion of the December 11, 2020 judgment of the trial court.

## CHILD SUPPORT

Finally, Dr. Hagen contends that the trial court erred in determining that Ms. Bilello's monthly gross income was $7,785.08 for purposes of calculating child support. Dr. Hagen argues that since Ms. Bilello did not file an answer, opposition, or other responsive pleading to his rule to reduce child support and did not provide adequate documentation as to her gross income or insurance benefits, the trial court should have accepted his calculation of Ms. Bilello's monthly gross income, which was $10,143.16.

As previously noted, Dr. Hagen filed a rule to reduce his child support obligation, alleging that there had been a material change in circumstances since the rendition of the July 10, 2018 judgment warranting a reduction in his child support obligation, *i.e.* that his gross income had decreased and that Ms. Billello's gross income had increased. Therefore, as the party seeking a modification of child support, he had the burden of proof in that regard. See La. R.S. 9:311(A). Furthermore, Dr. Hagen's modification of child support was initiated as a summary proceeding, and as such, an answer, opposition, or other responsive pleading by Ms. Bilello was not necessary. See La. C.C.P. arts. 2592(3) and (8) and 2593.

The trial court determined that Ms. Bilello's monthly gross income was $7,785.08. This determination was based on Ms. Bilello's 2019 federal income tax return, which was introduced into evidence, that indicated her yearly gross income was $93,421.00, which is $7,785.08 per month. Dr. Hagen contends that in addition to the yearly gross income reflected on Ms. Bilello's 2019 federal income tax return, the trial court should have included the additional sum of $28,296.94 for additional benefits paid by her employer, the Terrebonne Parish School Board, as reflected on

her paystubs from 2020, which were likewise introduced into evidence. These benefits included health insurance premiums, medicare taxes, life insurance premiums, and retirement contributions.

Louisiana Revised Statutes 9:315(C)(3) defines "[g]ross income," in pertinent part, as

> (a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, recurring monetary gifts, annuities, capital gains, social security benefits, workers' compensation benefits, basic and variable allowances for housing and subsistence from military pay and benefits, unemployment insurance benefits, disaster unemployment assistance received from the United States Department of Labor, disability insurance benefits, and spousal support received from a preexisting spousal support obligation; [and]
>
> (b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals ....

The trial court declined to include in either party's gross income additional sums or in-kind payments received in the course of employment, self-employment, or operation of a business on the basis that both parties failed to establish that the reimbursements or in-kind payments were both significant and reduced the other parent's personal living expenses. On appeal, Dr. Hagen has not pointed to, nor does our review of the record reveal, any evidence establishing that the in-kind payments received by Ms. Bilello in the course of her employment were both significant and reduced her living expenses. Therefore, based on our review of the record, we find no manifest error in the trial court's determination that Ms. Bilello's monthly gross income was $7,785.08 for purposes of calculating child support.

Accordingly, the trial court's judgment setting Dr. Hagen's child support obligation in the amount of $1,847.08 per month and ordering him to pay 75% of all high school tuition, mandatory high school books, mandatory high school fees, and uncovered necessary medical and dental expenses is affirmed.

## CONCLUSION

For all of the above and foregoing reasons, the December 11, 2020 judgment of the trial court is affirmed. All costs of this appeal are assessed to David Hagen.

**AFFIRMED.**